NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEITH EDWARDS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>EQUABLE ASCENT, FNCL, LLC.,<br><br>　　　　　Defendant. | Civil Action No.: 11-cv-2638 (CCC)<br><br><br><br>OPINION |

**CECCHI, District Judge.**

This matter comes before the Court on an unopposed motion by Equable Ascent Financial, LLC, ("Equable"), pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Keith Edwards's ("Plaintiff") complaint. The Court has considered Equable's motion made in support of the instant matter and decides the matter without oral argument. Fed. R. Civ. P. 78.

**I.　　INTRODUCTION**

Plaintiff brings the instant action under the Fair Credit Reporting Act ("FCRA"), alleging that Equable failed to provide Plaintiff with prior notice and authorization to place a collection account number on his personal credit file. 15 U.S.C. § 1681 et. seq. Based on the reasons set forth below, Equable's motion to dismiss is granted.

**II.　　FACTUAL AND PROCEDURAL HISTORY**

On April 18, 2011, Plaintiff initiated a cause of action against Equable in the Superior Court of New Jersey, Law Division, Special Civil Part, Union County alleging breach of contract for failing to provide him with prior notice and authorization to place a collection account number on his personal credit file. (Compl. 1, 2.) Plaintiff argues that Equable was obligated to

follow these procedures when reporting outstanding collection debts to credit reporting agencies. (Compl. ¶ 5, 6-8.) Plaintiff contends that Equable's alleged failure to follow these procedures has resulted in: (1) a negative credit rating, (2) denial of credit, and (3) subjection to illegal collection agency harassment. (Compl. ¶ 6, 10-13.) To redress these harms, Plaintiff seeks the following: (1) a notice that his debt has been closed or discharged, (2) notice to credit bureaus to remove their inaccurate reporting in relation to Plaintiff's account, (3) $750.00 in damages, and (4) in the case of a default judgment, attorney's fees not to exceed $3,000. (Compl. ¶¶ 7-8, 1-3.)

On November 21, 2011, Equable removed the case to this Court. Equable moved to dismiss Plaintiff's complaint on the grounds that: (1) Plaintiff's complaint does not allege any cause of action against Equable, but instead refers to an entity termed "Illinois;" (2) assuming, *arguendo*, that Plaintiff intended to state that Equable committed the alleged violations, the complaint still fails to state a claim for relief; (3) Plaintiff's complaint does not allege Equable's offending actions; (4) Plaintiff's complaint fails to set forth the basis for damages and how Equable's conduct is related to Plaintiff's alleged harms. (Def. Mot. to Dismiss, 6.) Equable now moves to have Plaintiff's complaint dismissed with prejudice in its entirety. *Id.*

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) governs the construction of a complaint mandating that a claim for relief must contain "a short and plain statement of the claim of the grounds for the court's jurisdiction . . . [a] showing that the pleader is entitled to relief . . . [and] a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). Rule 8 governs a complaint's construction for all plaintiffs. However, when the plaintiff is proceeding as *pro se*, the Court construes this rule liberally. *See U.S. v. Miller*, 197 F.3d 644, 648 (3d. Cir. 1999) (noting the Court's "time-honored practice of construing *pro se* plaintiffs' pleadings liberally.") Recognizing the

differences in legal sophistication between a *pro se* litigant and trained legal counsel, the Court will hold a *pro se* plaintiff's complaint to a less exacting standard than its counterpart. *See Haines v. Kerner*, 404 U.S. 519 (2007).

The Court now turns to Equable's motion to dismiss. The Court applies the standard of review related to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Under this Rule, the Court may dismiss the complaint for failure to state a claim upon which relief can be granted. In its application, a motion to dismiss "may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d. Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d. Cir. 1986). Moreover, the Court's inquiry is "not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop.*, Inc., 311 F.3d 198, 215 (3d. Cir. 2002).

The Supreme Court refined the Rule 12(b)(6) motion to dismiss standard in both *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* held that, "factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 570. *Iqbal* further refined the degree of factual pleadings to include facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S.Ct. at 1949.

When assessing a complaint's appropriateness, the Court distinguishes factual contentions that allege actions of the defendant that would satisfy elements of the claim asserted as distinct from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d.

902, 906 (3d. Cir. 1997) (holding that Courts will accept well-pled allegations as true, but will not credit bald assertions or legal conclusions). Furthermore, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation . . . [and] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. The Court may also examine the complaint's allegations along with any documents attached to or referenced in the complaint along with matters of the public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d. Cir. 1998); *In re Burlington*, 114 F.3d at 1426.

When the Court dismisses a complaint pursuant to Rule 12(b)(6), the plaintiff may be given leave to amend and reassert the claim within a set period of time. *In re Burlington*, 114 F.3d at 1434; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d. Cir. 2002). Claims may be dismissed with prejudice, however, if amending the complaint would be futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Here, "futile" essentially means that the complaint could not be amended to include a legally cognizable claim. *In re Burlington*, 114 F.3d at 1426 (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

### IV. DISCUSSION

#### A. The Federal Credit Reporting Act

The Federal Credit Reporting Act was enacted by Congress primarily to protect consumers. *See Gelman v. State Farm Mutual Auto Ins. Co.*, 583 F.3d 187, 191 (3d. Cir 2009) (quoting *Safeco. Ins. Co. of America v. Burr.*, 551 U.S. 47, 52 ("Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.")). Its stated purpose is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

4

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Simply stated, Congress enacted the FCRA to preserve consumer privacy in the information collected and stored by consumer reporting agencies.

The statute places duties on two types of entities – credit rating agencies and "furnishers of information." The latter category generally refers to "any entity that reports information relevant to a consumer's credit rating—i.e., payment history, amount of debt, and credit limit— to credit reporting agencies." *Burrell v. DFS Serv. LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010) (citing H.R. Rep. No. 108-396, at 24 (2003) (Conf. Rep.) ("The most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.")).

### B. Plaintiff's Claims Under § 1681s-2(a)

Section 1681s-2 of the FCRA generally addresses the responsibilities of information providers to consumer reporting agencies. 15 U.S.C. § 1681s-2. Subsection (a) of § 1681s-2 places a duty on data furnishers to provide accurate information noting that "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a). However, this prohibition does not apply if the data furnisher "clearly and conspicuously" noted an address where consumers can send complaints related to inaccurate charges. 15 U.S.C. § 1681s-2(a)(1)(C). Therefore, the FCRA places the burden of the information's accuracy on the consumer. If the consumer fails to place the data furnisher on notice that their acquired information contains inaccuracies, the data furnisher can still provide credit agencies with that inaccurate information. Put simply, § 1681s-2(a) enables a data furnisher to provide information

to a consumer credit agency as long as (1) the furnisher has indicated an address to which consumers can voice their dispute and (2) the furnisher was not in receipt of a complaint related to the data at issue.

Subsection (a) of 1681s-2 does not provide a private right of action. In *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011), the court held that a pro se plaintiff could not bring an action against a data furnisher for transmitting his credit information to a debt collection agency because "no private right of action exists under that provision [15 U.S.C. § 1681s-2a(1)(A)]." Likewise, in *Burrell*, 753 F. Supp. 2d at 447-48, this Court acknowledged that 15 U.S.C. § 1681s-2a(1)(A) contains no provision for bringing a private action. In that case, the Plaintiff, a victim of identity theft, claimed that after informing his credit card company of his situation, the company transmitted his information to various credit reporting agencies noting that the Plaintiff was delinquent in paying his bills. *Id.* at 439. The Court dismissed Plaintiff's claim as it related to the FCRA noting that "Mr. Burrell's claims under subsection (a) of 15 U.S.C. § 1681s-2 fail because that portion of the FCRA does not provide a private cause of action." *Id.* at 447.

Similarly, in *Lorenzo v. Palisades Collection, L.L.C.*, No. 05-0886, 2006 U.S. Dist. WL 891170, at *2 (D.N.J. Apr. 5, 2006), a pro se Plaintiff alleged that a Defendant collection agency violated the FCRA by failing to report to consumer credit agencies that a dispute over Plaintiff's debt existed and were deficient in failing to update and correct information related to that debt pursuant to its obligation under § 1681s-2. The Court dismissed plaintiff's claims related to § 1681s-2(a), "because this subsection does not allow for a private cause of action." *Lorenzo*, 2006 WL 891170, at * 2; *see also Fino v. Key Bank of New York,* No. 00-375, 2001 WL 849700, at *4 (W.D. Pa. July 27, 2001); *Chiang v. New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2009)

6

(holding that "Congress expressly limited furnishers' liability under §1681s-2(a) by prohibiting private suits for violations of that portion of the statute"); *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009) ("[Plaintiff] has no private right of action under § 1681s-2(a)(3) to proceed against [a data furnisher] for its . . . failure to notify the [credit reporting agencies] that he disputed the . . . charges [at issue].").

Here, Plaintiff's complaint alleges that "Illinois [Equable Ascent Financial LLC] failed to provide Plaintiff with prior notice and their authorization to place a collection account number 44978 notation on my personal credit file. Illinois did not comply with the requirements contained in contract, agreement, law, or regulation. Illinois was *legally required* to follow these procedures when *reporting delinquent collection debts* to credit reporting agencies." (Compl. ¶ 5, 7-9) (emphasis added). The Court finds that these allegations implicate Equable's duties as a data furnisher under 15 U.S.C. § 1681s-2. *See Carney v. Experian Info. Solutions Inc.*, 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999) (finding that a furnisher of credit information is an entity that "transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union.")

Plaintiff's complaint fails, however, to allege facts showing that Equable breached the FCRA requirements. *See Twombly*, 127 S.Ct. at 1974. Plaintiff does not explicitly cite the FCRA provisions in his complaint. Plaintiff asks this Court to enforce Equable's duty to provide Plaintiff with notice and authorization before placing a notation on his personal credit file consistent with a legal obligation. Moreover, Plaintiff asserts that he is willing "to dismiss his complaint" if Equable provides "notice to the credit bureaus to remove their inaccurate reporting in relations to [his] account." (Compl. ¶ 7, 16-17.) As discussed above, however, 15 U.S.C. § 1681s-2(a) does not provide a private right of action to enforce a data furnisher's duty to report

accurate information. Plaintiff's claim under this subsection is therefore dismissed with prejudice.

### C. Plaintiff's Claims Under 15 U.S.C. § 1681s-2(b)

Section 1681s-2(b) applies to a data furnisher's actions after being placed on notice by a consumer rating agency of a dispute and the existence of an informational error is confirmed. Section 1681s-2(b) is triggered only after a consumer notifies the consumer credit agency of a dispute. The consumer credit agency will then notify the data furnisher of the disputed information within five business days from the time the agency was notified by the consumer. Section 1681s-2(b)(1) provides specific guidelines for how the data furnisher may conduct the subsequent investigation into remedying the situation. 15 U.S.C. § 1681s-2(b)(1) states:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.

A data furnisher's investigation of its records must be reasonable "'to determine whether the disputed information can be verified.'" *Krajewski v. American Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2008)). It is important to emphasize that §1681s-2(b) does not provide relief for consumers

8

who lodge their dispute directly with their credit card company. *See Burrell*, 753 F. Supp. 2d at 448. Instead, the consumer is obliged to contact the consumer credit rating agency of the dispute that then contacts the consumer's credit card company. *See Young*, 294 F.3d at 639.

This Court has recognized the existence of a private right of action pursuant to 15 U.S.C. § 1681s-b(2). *See Martinez v. Granite State Mgmt. & Res.*, No. 08-2769, 2008 U.S. Dist. WL 5046792, at *5 (D.N.J. Nov. 20, 2008)(citing *Krajewski*, 557 F. Supp. 2d at 608)); *Bartley v. LVNV Funding LLC.*, No. 09-3884, 2010 U.S. Dist. WL 2629072, at *9 (D.N.J. June 28, 2010). "[I]n order to state a claim under section 1681s-2(b), the plaintiff must allege that: (1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Ruff v. America's Servicing Co.*, No. 07-0489, 2008 U.S. Dist. WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008); *see also, Smith v. Citimortgage, Inc.*, No. 08-492, 2009 U.S. Dist. WL 1976513 (S.D. Ms. July 7, 2009); *Shulick v. Experian*, No. 11-3809, 2011 U.S. Dist. WL 4346335 (E.D. Pa. Sept 16, 2011).

The existence of a private right of action under subsection (b) hinges on the consumer's direct notification of a dispute to the consumer credit agency. As this Court pointed out in *Burrell*, "[a] consumer cannot maintain a claim under subsection (b) of 15 U.S.C. § 1681-s2 based on disputes filed directly with his or her credit card company. Rather the consumer must communicate such disputes to a credit rating agency which is then obligated to pass them on to the credit card company." *Burrell*, 753 F. Supp. 2d at 448 (citing *Young*, 294 F.3d at 639). When a plaintiff alleges contact with a consumer credit agency, Courts in this Circuit have usually permitted complaints to proceed on the premise that discovery is warranted to ascertain whether or not a claim actually exists. *See Krajewski*, 557 F. Supp. 2d. at 610; *Jaramillo v.*

9

*Experian Info. Solutions, Inc.*, 155 F. Supp. 2d. 356, 363 (E.D. Pa. 2001); *Ruff*, 2008 WL 1830182, at *4.

Here, Plaintiff's complaint fails to allege that he notified a consumer agency of disputed information. *See Ruff*, 2008 WL 1830182, at *4. The complaint argues that "Illinois [Equable Ascent Financial] failed to provide Plaintiff with prior notice and their authorization to place a collection account number 44978 notation on [his] personal credit file." (Compl. ¶ 5, 3-4.) Even when construed liberally, the Plaintiff's complaint makes no mention of any attempt on his part to contact a consumer credit agency regarding his dispute over Equable's placement of collection account number 44978 notation on his credit file. Since such an allegation is necessary to maintain a private right of action under § 1681s-2(b), the Court need not reach the other two prongs highlighted in *Ruff*. Therefore, Plaintiff's claims under 15 U.S.C. § 1681s-2(b) are hereby dismissed. *Erikson v. Pardus*, 551 U.S. 89 (2007). Plaintiff may, however, submit an amended complaint to correct any deficiencies in this claim, in accordance with this Opinion.

### D. Pre-Emption of State Law under the FCRA

The FCRA contains two principal provisions that effectively pre-empt most, if not all, state causes of action. 15 U.S.C. § 1681h(e) states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

The FCRA's second pre-emption statute, 15 U.S.C. § 1681(t)(b)(1)(F), states that "no requirement or prohibition may be imposed under the laws of any State - - (1) with respect to any

10

subject matter regulated under – (F) section 1681s-2 of this title, relating to responsibilities of persons who furnish information to consumer reporting agencies." Based on the language of the statute, section 1681(t)(b)(1)(F) pre-empts all state causes of action, while 15 U.S.C § 1681h(e) provides pre-emption exemptions for defamation, invasion of privacy, and negligent actions involving a data furnisher acting with malice or willful intent.

This Court has adopted a total pre-emption approach. Most notably, *Burrell* held that § 1681(t)(b)(1)(F) "leaves no room for state law claims against furnishers of information . . . regardless of whether those claims are couched in terms of common law or state statutory obligations." *Burrell*, 753 F. Supp. 2d at 451. Similarly, both *Nonnenmacher v. Capital One*, 2001 WL 1321710 (D.N.J. Mar. 31, 2011) and *Henderson v. Equable Ascent Fin. LLC.*, 2011 WL 5429631 (D.N.J. Nov. 4, 2011) adopted the total preemption approach by dismissing a plaintiff's state statutory and common law claims. *See also, Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 479-501 (D.N.J. 2010); *Bartley v. LVNV Funding, LLC.*, 2010 U.S. Dist. WL 2629072, at *4 (D.N.J. June 28, 2010); *DiMedio v. HSBC Bank*, Civ. A. 08-5521(JBS/KMW), 2009 U.S. Dist. WL 1796072, at *9 (D.N.J. June 22, 2009). Moreover, the scope of section 1681(t)(b)(1)(F)'s pre-emptive effect is clear from the text: "'[n]o requirement or prohibition' relating to the duties of furnishers of information 'may be imposed under the laws of any State.'" 15 U.S.C. § 1681(t)(b)(1)(F).

This approach is also consistent with the Supreme Court's holding in *Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 521 (1992), which found that the statute's usage of "no requirement or prohibition" is to be construed broadly, "suggest[ing] no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d (2d Cir. 2009)

11

(adopting total preemption approach and reiterating the Supreme Court's interpretation of "no requirement or prohibition"). Finally, a total pre-emption approach to § 1681(t)(b)(1)(F) is consistent with this statute's legislative history. In this regard, "Congress's main goal in enacting the statute was establishing uniform regulations for furnishers; this purpose would be frustrated by an interpretive approach which leaves state common law claims against furnishers unaffected." *Henderson*, 2011 WL 5429631 at *5 (citing CONG. REC. H8, 122-2 (2003); *Jaramillo*, 155 F. Supp. 2d at 361).

Therefore, any of Plaintiff's breach of contract and negligence claims related to Equable's alleged failure to provide the Plaintiff with notice or authorization in placing a 44978 notation on his personal credit file are pre-empted by § 1681(t)(b)(1)(F) of the FCRA, which prohibits both state statutory and common law causes of action against data furnishers of consumer credit information. Plaintiff's state common law claims are thereby dismissed with prejudice.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is granted. To the extent that Plaintiff can amend his Complaint in accordance with this decision, Plaintiff is granted twenty-one (21) days in which to file an Amended Complaint that cures the pleading deficiencies discussed below. An appropriate form of Order will accompany this Opinion.

**DATED:** April 16, 2012

CLAIRE C. CECCHI, U.S.D.J.